UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM C. BOOHER,

    Plaintiff,

v.                                                  Case No. 1:13-cv-1008
                                                      Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on April 23 ,1969 (AR 203).[1] He completed the 8th grade and had previous employment as a painter (AR 209-10). Plaintiff suffered injuries in 2004 when he caught his throat on a steel cable while driving a dirt bike (AR 32-36). According to plaintiff's attorney, he sustained injury to his cervical neck in the accident, was hospitalized for a number of weeks, and has not worked since that time (AR 32). Plaintiff alleged a disability onset date of October 1, 2006 (AR 203). He amended the onset date to July 31, 2009, because in an earlier decision denying benefits, Administrative Law Judge (ALJ) Edward G. Hoban had determined that plaintiff was not disabled from October 1, 2006 through July 30, 2009 (AR 11, 34-5, 103-04). In that decision, ALJ Hoban recounted that plaintiff underwent a "tracheal transection, status post four-wheeler accident" and

---

[1] Citations to the administrative record will be referenced as (AR "page #").

found that plaintiff suffered from severe impairments of status post tracheal transection and an affective disorder (AR 98, 101).

In the present case, plaintiff identified his disabling conditions as depression, severe chronic neck and back pain, knee problems (arthritis), severe headaches (migraines), unidentified "medical restrictions," stamina problems ("gets winded easily" and "can't talk long has to catch his breath"), breathing problems ("can't look up air gets cut off"), and "has hard time eating" (AR 208). On June 14, 2012, ALJ Wayne L. Ritter reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 10-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

3

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, ALJ Ritter found that plaintiff had not engaged in substantial gainful activity since the amended onset date of July 31, 2009 and met the insured status requirements of the Social Security Act through December 31, 2011 (AR 13). At step two, the ALJ found that plaintiff suffered from severe impairments of disorders of the lumbar and cervical spine, status post tracheostomy and affective disorder (AR 13). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listing 1.04 (disorders of the spine) and 12.04 (affective disorders) (AR 14-16).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b); however, he is further limited as follows. He can only occasionally push or pull with

4

> his bilateral upper extremities. He can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, or crawl. He cannot climb ladders, ropes, or scaffolds. He is limited to occasional rotation, flexion, or extension of the neck. He must avoid moderate exposure to excessive vibration, use of moving machinery, or exposure to unprotected heights or hazards. He is limited to occupations that do not require significant reading or writing. Work is limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes. He is limited to only occasional interaction with the public, co-workers, and supervisors.

(AR 16). The ALJ also found that plaintiff was unable to perform his past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 20-21). Specifically, plaintiff could perform the following unskilled work in Michigan: inspector (2,800 light jobs); inspector/packager (2,805 light jobs); dowel inspector (1,690 sedentary jobs); table worker (1,610 sedentary jobs); bench hand (1,390 sedentary jobs); and sorter (1,420 sedentary jobs) (AR 20). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 31, 2009 (the amended onset date) through June 14, 2012 (the date of the decision) (AR 21).

### III. ANALYSIS

Plaintiff did not provide an initial brief in the form as directed by the Court. *See* Notice (docket no. 9). The Court construes plaintiff's brief as raising two issues on appeal:

**A. The ALJ erred by rejecting the opinion of the treating physician violating the treating physician rule, SSR 96-2p.**

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician, Jeffrey Miller, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those

of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Plaintiff relies on Dr. Miller's opinions as set forth in a "Medical source statement of ability to do work-related activities (mental)" dated February 6, 2009 (AR 282-84) and a "Medical source statement of ability to do work-related activities (physical)" also dated February 6, 2009 (AR 411-16).

Dr. Miller made the following findings with respect to plaintiff's mental impairments which existed as of February 6, 2009 (AR 282-84). Plaintiff's impairment posed no restriction on his ability to understand and remember simple instructions, and either no restriction or at most a mild restriction on his ability to carry out simple instructions (AR 282). The impairment posed moderate restriction on plaintiff's ability to make judgments on simple work-related decisions (AR 282). However, the doctor felt that plaintiff had extreme restrictions on his ability to understand and remember complex instructions, to carry out complex instructions, ability to make judgments on complex work-related decisions (AR 282). When asked to identify the particular medical signs or laboratory findings that supported his assessment, the doctor stated "History - forgets things [unintelligible], only went to the eighth grade and had severe difficulty in school" (AR 282).

Dr. Miller also opined that plaintiff had impairments interacting with other people. Specifically, the doctor indicated that plaintiff had "marked restrictions" in all areas of interaction presented on the form (i.e., interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and responding appropriately "to usual work situations and to changes in a routine setting") (AR 283). When asked to identify the particular medical signs or laboratory findings that supported his assessment, the doctor stated "Patient history - didn't adjust to coworkers or supervisors - needed to be on solo painting jobs when he worked" (AR 283).

7

When asked if other capabilities were affected by the impairment, Dr. Miller stated "He can do very little movement because of the neck injury - almost no tasks involving the upper extremities would be possible" (AR 283). When asked to identify the particular medical signs or laboratory findings that supported his assessment, the doctor stated "Has only - 15° to neck turns - has extreme sensitivity to touch on his neck" (AR 283). Finally, the doctor indicated that plaintiff could not "manage benefits in his/her own best interest" but "needs input from his wife" (AR 284).

Dr. Miller made the following findings with respect to plaintiff's physical impairments which he believed were first present on August 20, 2004 (AR 411-16). With respect to weight restrictions, the doctor opined that plaintiff could occasionally lift up to 10 pounds and frequently carry that weight (AR 411). However, the doctor did not identify any medical or clinical findings to support these limitations (AR 411).

During an 8-hour work day, plaintiff could sit for one hour, stand for three hours and walk for two hours, with the need to "lie down frequently to get pressure off neck" (AR 412). Plaintiff could walk up to one block and did not need a cane (AR 412). The doctor stated that these limitations were supported by plaintiff's history and "observation" (AR 412).

Dr. Miller found that plaintiff could not reach overhead with either hand, but could occasionally perform other reaching, as well has handling, fingering, feeling and "push/pull" (AR 413). The doctor reached this finding based on plaintiff's history and his observations (AR 413). In addition, the doctor stated that plaintiff could occasionally operate foot controls, basing this determination on history and observations, as well as plaintiff's ability to drive short distances (AR 413).

With respect to postural limitations, the doctor found that plaintiff could climb stairs and ramps occasionally, but that he became winded after about one flight (AR 414). However, plaintiff could never climb ladders or scaffolds, balance ,stoop, kneel, crouch or crawl (AR 414). The doctor did not identify any medical or clinical findings to support these limitations (AR 414).

The doctor did not identify any impairments with plaintiff's hearing or vision (AR 414). However, the doctor noted that plaintiff had some cognitive deficits. While plaintiff was able to view a computer screen, he could not type and could "hardly read" (AR 414). The doctor did not identify any medical or clinical findings to support these statements (AR 414).

With respect to environmental limitations, Dr. Miller found that plaintiff could never tolerate exposure: to unprotected heights; to moving mechanical parts; to dust, odors, fumes and pulmonary irritants; or vibrations (AR 415). Plaintiff could occasionally tolerate exposure: to operating a motor vehicle; extreme cold; and extreme heat (AR 415). In addition, plaintiff could occasionally tolerate a loud environment (such as heavy traffic) but not a very loud environment (such as a jackhammer) (AR 415). However, the doctor did not identify any medical or clinical findings to support these environmental restrictions (AR 415).

In another section of the form, Dr. Miller indicated that plaintiff could perform the following activities: ambulate without assistive devices; walk a block at a reasonable pace on rough or uneven surfaces ("but takes frequent breaks"); use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; and care for personal hygiene (AR 416). However, the doctor indicated that plaintiff could not perform activities like shopping or travel without a companion for assistance (AR 416). While the doctor checked the "no" box when asked if plaintiff could prepare a simple meal and feed himself or if plaintiff could "sort, handle, and use

9

paper/files," his comments contradicted these statements (AR 416). In this regard, Dr. Miller noted that plaintiff could "occasionally" prepare a simple meal and feed himself, and that the reason plaintiff could not "sort, handle or use paper/files" was due to a deficit rather than a physical impairment, (i.e., plaintiff "can't read") (AR 416). The doctor did not list any medical or clinical findings to support these determinations (AR 416). Finally, when asked to identify other work-related activities affected by plaintiff's impairments, the doctor stated "[i]nability to move and tenderness of neck are severe limitations" (AR 416).

The ALJ addressed Dr. Miller's opinions as follows:

> As for the opinion evidence, the undersigned gives the primary care doctor's (Dr. Miller) opinion little weight (Exhibit B4F) [medical source statement to do work-related activities (mental)]. Dr. Miller gave no specific work-related mental limitations, and yet found the claimant had marked and extreme limitations without having ever referred the claimant for mental health specialists for treatment. In fact, the claimant's only mental health treatment consisted of medications prescribed by Dr. Miller such as Lexapro (for a short time) and medical marijuana - the only medication the claimant testified to currently taking for his mental impairments - and his diagnoses were based on situational stress factors. In short, there is no strong objective support in the longitudinal treatment record for Dr. Miller's opined extreme mental limitations. Likewise, the undersigned gives little weight to Dr. Miller's restriction to less than the full range of sedentary work weight since it, too, is not supported by the medical records (Exhibit B14F) [medical source statement to work-related activities (physical)]. As just one example, Dr. Miller's opinion the claimant is restricted to only occasional handling and fingering bilaterally is directly contradicted by the claimant's <u>actual</u> functioning as shown by his testimony that he has <u>no</u> problems using his hands, and to a lack of objective findings to support such a limitation. The same is true of Dr. Miller's opinion that the claimant is limited to only one hour of sitting per eight hour day, when the claimant worked for two years at the medium exertional level after his injury, admits to watching TV regularly, and sat without any evidence of pain for the one hour hearing. In short, the undersigned finds that Dr. Miller's opinions are not supported by the objective evidence, claimant's work history or his admitted functioning as shown by his activities of daily living.

(AR 18-19) (emphasis in original).

Based on this record, the Court concludes that the ALJ gave good reasons for giving Dr. Miller's opinions little weight. As discussed, while some of the doctor's opinions were based on observations (e.g., plaintiff's ability to turn his neck only 15°), the doctor did not identify medical or clinical findings to support most of the physical limitations. With respect to the mental limitations, the ALJ noted that plaintiff's main treatment was using medical marijuana. In discounting Dr. Miller's opinion regarding the severity of plaintiff's mental condition, the ALJ observed that the doctor did not refer plaintiff to a mental health specialist. Plaintiff contends that the ALJ improperly discounted Dr. Miller's opinion because the ALJ did not address the reason why plaintiff did not seek out additional treatment for his mental impairments. As the Sixth Circuit stated in *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (1989), "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *See also* Social Security Ruling (SSR) 96-7p ("Evaluation of symptoms in disability claims: assessing the credbility of an individual's statements") which provides that before an ALJ cannot draw an adverse inference from a claimant's failure to seek out regular medical treatment, without first "considering any explanations the individual may provide or other information in the record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").[2] Here, however, the ALJ did not make an adverse credibility determination due to plaintiff's failure to seek out mental health treatment. Rather, the ALJ noted that Dr. Miller was treating plaintiff and did not refer

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

plaintiff out to a mental health specialist. From this statement, one could infer that plaintiff's mental impairment was being treated adequately by Dr. Miller. While plaintiff claims to have a disabling mental impairment, plaintiff testified at the hearing that he had never been hospitalized overnight for mental health treatment (AR 39). Plaintiff also testified that the treatment for his mental impairments included medical marijuana to help him sleep and to treat his depression (AR 39, 391-92). As the consultative examiners noted in January 2011, plaintiff used marijuana three times a day, reporting that "it helps him sleep and also helps with the depression and anger as well as lets him deal with pain" (AR 391-92).

While the ALJ properly discounted Dr. Miller's opinions, the RFC includes some of the limitations contained in those opinions. The ALJ's RFC accounted for plaintiff's mental impairments by limiting him "to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, with few, if any, work place changes" and limiting him "to only occasional interaction with the public, co-workers, and supervisors" (AR 16). In addition, the ALJ's RFC accounted for some of the physical limitations expressed by Dr. Miller, by finding that plaintiff could perform a very limited range of light work (AR 16).

Furthermore, given the procedural record, Dr. Miller's opinions from February 6, 2009 are either irrelevant to plaintiff's condition in this appeal or support ALJ Ritter's determination that he is not disabled. As discussed, ALJ Hoban found that plaintiff was not disabled from October 1, 2006 through July 30, 2009 (AR 103-04). Because ALJ Ritter did not re-open ALJ Hoban's decision, Hoban's earlier decision is *res judicata* as to the issue of plaintiff's disability on or before July 30, 2009 (AR 33-35). *See generally, Drummond v. Commissioner of Social Security*, 126 F.3d

837, 842 (6th Cir. 1997) ("[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ"). Plaintiff did not seek to re-open ALJ Hoban's disability determination, but chose to amend his alleged disability onset date to July 31, 2009, the day after ALJ Hoban made that determination. The issue before ALJ Ritter, and for this Court on appeal, is whether plaintiff has been disabled since July 31, 2009. Dr. Miller's opinions, which evaluated plaintiff's condition as of February 6, 2009, do not address that issue. Regardless of the limitations which Dr. Miller expressed in his opinions, it is undisputed that plaintiff was not disabled when the doctor evaluated him. In this regard, the Court notes that ALJ Hoban reviewed Dr. Miller's opinions in 2009 and assigned those opinions little weight (AR 102).[3] Plaintiff points out that ALJ Ritter did not address Dr. Miller's April 24, 2012 addendum, in which the doctor checked a box indicating that the February 6, 2009 opinion was "still an accurate statement of Mr. Booher's medical condition" (AR 425). This addendum, however, only undermines plaintiff's position. Since plaintiff was not disabled on February 6, 2009, and his condition remained unchanged from that date through April 24, 2012, the addendum supports ALJ Ritter's determination that plaintiff was not disabled. For these reasons, plaintiff's claim of error should be denied.

> **B.    The ALJ improperly discounted the consultative examiner.**

Plaintiff contends that ALJ Ritter improperly discounted the opinion of Barbara Halazon, Ph.D. (limited licensed psychologist) and Margaret K. Cappone, Ph.D. (licensed psychologist), who performed a consultative examination of plaintiff on January 5, 2011 (AR 389-

---

[3] At that time, Dr. Miller's opinions were designated as Exhibits 12F and 13F (AR 102, 282-84, 411-17). ALJ Ritter referred to these opinions as Exhibits B4F and B14F (AR 18-19, 282-84, 411-17). The Court notes that these opinions appear in the index as part of the "Prior Folder Medical Evidence." *See* Index (docket no. 8-1).

96). In this report, the consultative examiners observed that plaintiff was in contact with reality, had low self esteem, and was "anxious, mildly agitated" (AR 393). Plaintiff was quite pleasant but described himself as angry and frustrated (AR 393). His speech was spontaneous, logical and coherent (AR 393). Plaintiff was oriented to time, person and place (AR 394). The doctors reported the following memory test results: immediate memory (able to recall 5 digits forward and 4 digits backward); recent memory (able to recall 3 out of 3 objects three minutes later); and past (able to name three former presidents, his birthdate and his age) (AR 394).

Plaintiff reported difficulty reading, i.e., he would not be able to read and understand a newspaper (AR 393). With respect to his academic skills, plaintiff stated that he completed the 8th grade, dropped out of school at the beginning of 9th grade, at age 16, that he was kicked out for skipping too many days, that school was hard and he did not like being there (AR 391, 394). He denied hallucinations, delusions and obsessions, but he had feelings of worthlessness and some suicidal ideas (AR 394). Plaintiff smokes medical marijuana three times per day (AR 394).

The consultative examiners determined that plaintiff had a major depressive disorder, recurrent, severe, without psychotic features (AR 396). The examiners provided the following medical source statement which summarized his work restrictions:

> Claimant could follow 1 and 2 part directives. He could not follow complicated directives. Claimant appears to be an individual who would not have the stamina to perform regularly scheduled work. He is under multiple limitations secondary to his physical condition.

(AR 396). Finally, contrary to Dr. Miller, the examiners felt that plaintiff was able to handle his own funds (AR 396).

ALJ Ritter addressed Dr. Halazon and Dr. Cappone's opinion as follows:

14

> The undersigned gives the consultative psychologist's (Dr. Cappone) opinion little weight as it is not supported by a longitudinal record of treatment, as explained above, or by the claimant's actual functioning. It also appears to be highly deferential to the claimant's subjective complaints and based in no small part on his physical impairments, as when Dr. Cappone opined he "would not have the stamina to perform regularly scheduled work. He is under multiple limitations secondary to his physical condition" (Exhibit B11F). Thus, her opinions are partially based on physical impairments that are outside her expertise, and her opinion about the claimant's stamina was made on a one-time evaluation without any way to assess his stamina on a long-term basis.

(AR 19).

Non-treating acceptable medical sources, like Drs. Halazon and Cappone, are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir.1989). While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007).

Here, however, ALJ Ritter articulated reasons for giving little weight to the opinions of the consultative examiners, finding that the examiners were highly deferential to plaintiff's subjective complaints and that they relied on his physical limitations as a basis for concluding that plaintiff could not perform regularly scheduled work.

As an initial matter, ALJ Ritter could not discount the examiner's opinions of plaintiff's psychological condition solely because the examiners relied on plaintiff's subjective complaints. With respect to plaintiff's subjective complaints regarding his mental condition, the

Sixth Circuit has stated that "[m]ental disorders are not uncommonly diagnosed after one interview." *Blankenship*, 874 F.2d at 1121. As the Sixth Circuit explained:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [ sic ] in order to obtain objective clinical manifestations of medical illness . . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship*, 874 F.2d at 1121, quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987).

Nevertheless, ALJ Ritter could discount the examiners' conclusions to the extent that they relied on plaintiff's physical condition as a basis for determining that he could not perform regularly scheduled work. A psychologist does not have the expertise to testify regarding the extent of a claimant's disability due to physical limitations. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (noting that psychologist is not qualified to diagnose a claimant's physical limitations). Here, the examining psychologists relied heavily on plaintiff's lack of stamina as "a" -- if not "the" -- condition which precluded plaintiff from performing regularly scheduled work. Accordingly, the ALJ could reject Drs. Halazon and Cappone's opinions which diagnosed plaintiff's physical limitations.

Finally, the ALJ apparently adopted Drs. Halazon and Cappone's opinions that plaintiff "could follow 1 and 2 part directives" but "could not follow complicated directives." In this instance, the ALJ's RFC was consistent with their limitations by restricting plaintiff to work: that did not require significant reading or writing; that was limited to simple, routine, and repetitive

tasks; that was performed in a work environment free of fast-paced production requirements; that involved only simple, work-related decisions; that involved few, if any, work place changes; and that was limited to only occasional interaction with the public, co-workers, and supervisors (AR 16). Based on this record, the Court concludes that the ALJ did not err in evaluating the opinions given by Drs. Halazon and Cappone.

Accordingly, plaintiff's claim of error should be denied.

### IV.	Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated:  September 4, 2014              /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).